**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

NOV 2 6 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| Dr. Julius Trimble, Pro Se | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 1:25:CV5544-MHC- |
| vs. | ) RDC |
| Fort Valley State University | ) |
| Defendant | ) |
| | ) |
| _____ | ) |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGEMENT

## Introduction

Plaintiff, Dr. Julius Trimble respectfully moves for summary judgement on his behalf, as there are no disputed issues of material fact or credibility that warrant a hearing in this case.

## Statement of the Claims

My complaint is that Ms. Valeria Bass, Departmental Secretary, Dr. Komanduri Murty Departmental Chair of Behavioral and Social Sciences along with Dr. Gregroy Ford, Dean of Arts and Sciences harassed me because of my sex for over

1

2 years. In fact, between April 2020 and January 2021 I received over 40 false complaints from Dr. Murty, Ms. Bass and Dean Ford regarding so-called student complaints. This is over 5 complaints a month for 9 months. Dr. Murty and Dean Ford retaliated against me over 16 times in 3 months. This is over 5 incidences of retaliation a month for 3 months. Ms. Bass, Dr. Murty and Dean Ford used 2 full-time professors (Ms. Brandesha Bowman and Dr. Ronald Craig), 3 Adjunct Professors, several staff members, 2 Vice Presidents Dr. Ramon Stuart and Dr. Jesse Kane and over 18 students to harass me creating a hostile work environment that led to me being constructively discharged. The harassment began in April of 2019 when Ms. Bass, along with two other professors, Ms. Bowman and Dr. Craig, attempted to get me removed from teaching the internship program. Ms. Bass, along with Dr. Craig and Ms. Bowman sent an email out to all of the criminal justice professors claiming that I was not treating the students fairly and that I was not doing a good job in that position. They wanted me out of the position so that Ms. Bowman could get her wish, which was to teach internship. In December of 2019 I received my first email from Ms. Bass and Ms. Bowman concerning a student claiming I was not responding to his request (Ryan Gary), however, I had already spoke with this student a week to 10 days earlier. In the spring of 2019, I had several conversations with Dr. Murty about Ms. Bass and the people she was using to harass me. He would say that he was going to take care of it but never did.

2

However, Ms. Bass continued to harass me. In March of 2019, Ms. Bowman, criminal justice instructor, passed away from an illness. There was also a shut down for two weeks after the covid-19 pandemic arrived. When we returned to the university, I was asked by Dr. Murty to teach Ms. Bowman's classes after her death mid semester. Dr. Murty also asked me to advise the students who were assigned to Ms. Bowman for advisement. These were the same students Ms. Bass used to harass me. In April of 2020 Ms. Bass and Dean Ford began to harass me after I refused to give students associated with Ms. Bass their mid-term grades as their final grades. There was still over 6 weeks left in the semester. Ms. Bass had those students send emails to Dean Ford claiming that I did not give them their correct final grade. However, I keep accurate records, so I was able to provide the necessary evidence that the student had received the correct grade. After this incident, I began to receive several emails from Ms. Bass and Dr. Murty claiming that students were complaining about not being able to contact me. However, I had never received any requests from these students for assistance. In June of 2020 Dr. Murty and Ms. Bass started a program to monitor my emails. They used this program to harass me. Ms. Bass would have the students falsely claim that they either was unable to contact me or I was not providing them with proper assistance. I was harassed all of the summer of 2020 using the same method of operations which was to have students falsely claim that I was not assisting them with their

3

problems. In the Fall of 2020, their harassment using false student complaints continued. However, this is when Dean Ford and Ms. Bass began to include the adjunct professors as a way to harass me. They would make false claims about me not helping the adjunct professors even though I had already provided the necessary assistance. They were attempting to build a record of me not responding to students and adjunct professors. I know this because Dr. Murty in one of his emails told Ms. Bass that she was supposed keep her emails from me in a file. Their goal at this point was to harass me, creating a hostile work environment resulting in my constructive discharge. They continued to harass me during the fall semester of 2020 as well. They used the same method of operation, which was to have students send emails to Ms. Bass and she would send them as a complaint to Dr. Murty or Dean Ford. In December of 2020 Ms. Bass wanted me to work over the Christmas holiday break. This was her way of harassing me, because none of the other professors were working over the holiday. We are not required to work on our breaks otherwise it would not be a break. Dr. Murty attempted to force me to work over the holiday but was unable to tell me why. So, I compromised and told him I would leave my emails open during the break. In January of 2021their harassment accelerated expeditiously. Ms. Bass, Dr. Murty and Dean Ford increased their harassment of me. Dean Ford took the lead in their harassment of me. Ms. Bass sent Dean Ford a student complaint in January from Alexus Snow.

4

The student supposedly got her parent involved, Tomika Snow, however, it was Ms. Bass pretending to be the student's parent or she assisted someone else in the writing of the letter. The letter lied about my performance and was very critical of me and my advisement of students. Dean Ford had me come in for a disciplinary meeting after this incident. I explained to the Dean that these were all lies. He said he had students to lie on him and that I needed to stop students from sending complaints to him. I did not understand how I was supposed to do that. But I also realized that Dean Ford was harassing me with an end goal of me resigning or he and Dr. Murty would be able to terminate me for not responding to students. This was a lie. I received several additional so-called complaints in January 2021. In February 2021 I received an email from Dean Ford claiming student Juanye Samuels had sent him a complaint and needed me to meet for a disciplinary action meeting. This was only 8 days after he called me in regarding student Alexus Snow. It was at this point I realized that the harassment was not going to stop unless I resigned or got human resources involved. So, I contacted human resources but was unable to get her to call me back. I contacted Dr. Stuart VP Academic Affairs and Dean Ford's supervisor. I explained to him that Dean Ford and Ms. Bass were harassing me with so-called complaints from students. These were lies and they knew it. It was the method Ms. Bass, Dr. Murty and Dean Ford used to harass me. After I informed Dr. Stuart, he discussed the issue with Dean

5

Ford. I did not hear anything until May 25, 2021. This is when Dean Ford retaliated against me for reporting him to Dr. Stuart. He used the same method of operations they used in the past which was to send me an email supposedly of a student complaint. However, this time Dean Ford sent the email himself pretending to be student Wayna Davis. I was sent 3 of these so-called complaints from Dean Ford. On June 17, 2021, Dr. Murty demoted me from the criminal justice program coordinator's position in retaliation for reporting him and Dean Ford to Dr. Stuart. Dean Ford announced his resignation effective July 30, 2021. Dr. Stuart last day was June 30, 2021. Dean Ford created a contract with Dr. Murty that gave him sole authority over what happens with my employment. I was told this by the acting, Dean, Dr. Berlethia Pitts. This was Dean Ford and Dr. Murty retaliating against me. Dr. Murty continued to retaliate against me until my resignation on August 9, 2021. However, in October 2021, 2 months after my resignation, I was retaliated against again by Dr. Murty and Ms. Bass. This is when I decided that the only way to resolve this matter was to litigate it. So, in October 2021 I contacted the EEOC.

**Statement of Undisputed Material Facts**

1. Plaintiff, Dr. Julius Trimble, was employed at Fort Valley State University from January 2009 until August 9, 2021. (Compl, pg. 2, 1 para)

6

2. Plaintiff, Dr. Trimble was an Associate Professor of Criminal Justice in August of 2021 and the Program Coordinator for Criminal Justice from 2014 until June of 2021. (Compl, pg. 2, 1 para)

3. Plaintiff, Dr. Trimble received a right to sue letter from the EEOC on December 15, 2021. (Compl, pg. 2, 1 para)

4. Plaintiff, Dr. Julius Trimble received a mandate in April of 2024 from the 11th Circuit Court of Appeals the court found that there was sufficient evidence that I had been harassed, creating a hostile work environment that led to Plaintiff's constructive discharge. The 3 Judge Panel also found that they did not see any evidence of sex discrimination. However, my complaint identifies the evidence of sex discrimination and the Supreme Court precedence to support that evidence. The court also found that they needed clarification on my retaliation claims. I provided clarification by identifying my protected activity and its proximality to the retaliation. (Compl, pg.3, 2 Para)

5. Plaintiff, Dr. Trimble harassment began in April 2019 with Ms. Bass and Ms. Bowman and Dr. Craig. They sent an email to all of the criminal justice faculty claiming I was not providing proper instructions to my students. This was a matter that should have been discussed with the Departmental Chair, Dr. Murty. However,

7

they choose to send it out anyway in their effort to harass me. (Compl., HAR-4, pg.10).

6. Plaintiff, Dr. Trimble received over 40 so-called student and adjunct professors' complaints about not providing assistance to them. However, they do not provide evidence that I received an email or phone call prior to the students' complaint about a non- response from me. This is because I never received a request for assistance from the student. They, along with Ms. Bass, just claimed I was not responding to them. This was a lie made in order to harass me. (Compl, HAR-46, pg. 1-29).

7. In June of 2020 Dr. Murty and Ms. Bass set up a program to monitor my (so-called) complaints from students. When I asked Dr. Murty why they set this program up he stated "why you do not like it. This indicated that they were purposely preparing to harass me via the email system for the so-called complaints from students. The complaints were all made by Ms. Bass, Dr. Murty and Dean Ford, using the students and adjunct professors as their props to harass me some willingly and other unwillingly (Compl, HAR-21, pg.18).

8. In the fall of 2020 Dean Ford call me to a disciplinary meeting regarding the adjunct professors. He stated that Ms. Bass told him that I did not give the new adjunct professors their new hire orientation. I had told Dr. Murty that I was going

to give adjunct professors' an orientation and had conducted the meeting 10 days prior to Ms. Bass lying claiming that I had not given them an orientation. The adjunct professors could not have told her that since I had given the orientation approximately 10 days earlier. So, they do not have any facts or evidence to support their contention that I was not responding to the adjunct professors (Compl, HAR-26, pg.21).

9. Dr. Murty, Ms. Bass and Dean Ford does not deny sending me complaints. However, the complaints were all false. There is no evidence that the student had made a request for assistance prior to the complaint. The defense has not provided any facts or evidence that suggests that the students had requested assistance prior to contacting Ms. Bass, Dr. Murty or Dean Ford. Besides, I told them each time I received one of their so-called complaints that these students and Ms. Bass were lying. I express this in emails, over the phone and in person (via zoom) (Compl, HAR, 1-46, pgs. 1-29).

10. I was forced to work during the Christmas Holiday 2020 by Dr. Murty at Ms. Bass' request. None of the other professor were working over the holiday. Besides all of the students were out for holiday, there was not anything for me to do. So, this is Ms. Bass and Dr. Murty harassing me. Otherwise, why have me work over the holiday when there are not any classes (Compl, HAR 35, pg.25)

11. Ms. Bass did not deny that she had student Armani Alderman on December 9, 2020, contact Dean Ford instead of me. This was a continuation of their effort to harass me (Compl, HAR 35, Pg.25)

12. In January 2021 I received an email from Ms. Bass regarding student Alexus Snow. The student claimed that I did not respond to her emails in October 2020. And that I also failed to inform her that she was required to take another course to graduate. Yet, I had informed this student several times what courses were required for her to graduate. In response to this student's so-called complaint Ms. Bass, Dr. Murty and Dean Ford set up a meeting to discuss possible disciplinary action against me for not responding to students and not counseling the student on their requirements to graduate. This was all a lie since I had already spoke to her about what was needed to graduate. I explained this to Dean Ford during the Zoom meeting. He stated that he did not care if the student was lying. And that I was supposed to get them to stop complaining about me not responding to them which was lie. I had responded to her. This student was one of Ms. Bass' and Ms. Bowmans' friend. She was one of the several students Ms. Bass used to harass me (Compl, HAR 36, Pg. 25).

13. Ms. Bass was involved in the email sent to me on January 26, 2021, from (Tomika Snow) who supposedly is the student (Alexus Snow) parent. The letter contained false information about my response to this student. I had informed this

student several times that she had one course left Spanish 2001. This was made to seem as if it was an urgent problem, but it was typical of some of the students. They do not always follow the advice of their adviser. However, Ms. Bass took advantage of the situation in their continued harassment of me. This was used as justification to bring me in for a disciplinary meeting regarding student Alexus Snow. Ms. Bass wrote this letter or provided assistance. The letter praises Ms. Bass and Dr. Murty for informing her to contact Dean Ford so this is a continuation of their harassment. However, there is also evidence that they shared this false information with someone outside the university (Tomika Snow) which is one of the reasons I claimed reputational damages (Compl, HAR-36, Pg. 25).

14. Approximately 8 days after Dean Ford called me in for a disciplinary hearing regarding student Alex Snow on February 5, 2021, student Juanye Samuels sent a complaint to Dean Ford. There is not specific complaint against me just praise for Ms. Bowman and Ms. Bass. She basically stated that I was not a good advisor and that Ms. Bowman was a good advisor. Ms. Bass had her contact Dean Ford. Dean Ford contacted me stating that I promised him that there would not be any addition complaints from students. He stated that we needed to meet again for a disciplinary meeting 8 days after meeting him regarding the false complaint made by student Alexus Snow. I decline meeting with him and explained to him that I would be contacting human resources (Compl, HAR-45, Pg.29)

15. I contacted the human resources department on February 5, 2021, twice but was unable to speak to the director. However, I was able to contact Dr. Ramon Stuart, VP Academic Affairs. I explained to him about me being harassed by Ms. Bass and Dean Ford. I did not receive any false complaints until May of 2021 when I received several retaliatory emails from Dean Ford. He was pretending to be a student (Waya Davis) who needed my assistance (Compl, HIB-47, Pg.30).

16. On May 25, 2021, I received my first retaliatory email from Dean Ford. He was pretending to be student Waya Davis. He was harassing me in retaliation for informing his supervisor Dr. Ramon Stuart VP of Academic Affairs. I received several of these email complaints (Compl, Retaliation-1, pg.32)

17. On June 17, 2021, Dr. Murty demoted me from my position as Criminal Justice Program Coordinator. He told me he was doing it because I was complaining about him and Ms. Bass harassing me. I became upset. I told Dr. Murty I was going to contact Dean Ford. Dean Ford, however, agreed with Dr. Murty about my demotion from Criminal Justice Program Coordinator. Dean Ford said that Dr. Murty told him that he could not conduct his business with me complaining about Ms. Bass harassment. I contacted Dr. Stuart VP of Academic Affairs. I explained to him that Dr. Murty and Dean Ford had demoted me from my position as Program Coordinator. Dr. Stuart referred me to Human Resources again. I had tried to

contact them back in February 2021 but did not get a response (Compl, Retaliation-5, pg.34).

18. On July 21, 2021, I was finally able to speak to Human Resources (Ms. Battle). I explained to her that I was being harassed by Ms. Bass, Dr. Murty and Dean Ford. I also told her that they were having students send emails lying about contacting me before they complained to Dr. Murty and Dean Ford. I also asked her for a transfer away from Ms. Bass and Dr. Murty. She told me that it was Dr. Murty decision whether to allow me to transfer. I explained to her that he was harassing me as well with the so-called complaints from students (Compl, Retaliation-9, pg. 36).

19. I contacted Dr. Murty after I left human resources on July 21, 2021. I told him that I was not going to be able to work with Ms. Bass anymore and that I needed a transfer to another department. He told me that if I did not want to work with Ms. Bass that he wanted my resignation. He stated that he wanted it in writing. I refused to resign and instead talk to the new Dean Dr. Pitts. She stated that she could not transfer me because Dean Ford and Dr. Murty had a contract allowing Dr. Murty to make all decisions as it relates to me and my employment. This was in retaliation for going to human resources (Compl, Retaliation-9, pg. 36).

20. On July 28, 2021, Dr. Murty threatened to reprimand me if I did not stop complaining about Ms. Bass harassment. This was retaliation against me for reporting Dr. Murty and Dean Ford to Human Resources and the VP of Academic Affairs (Compl, Retaliation-10, Pg.37)

21. On August 9, 2021, I resign my position because I had been harassed and was being retaliated against. Dr. Murty approved my resignation but stated that I was lying about being harassed by him, Ms. Bass and Dean Ford (Compl, Retaliation-13, pg. 39).

## Legal Standards

### A.  Summary Judgement Standard

Summary judgement is appropriate if the pleadings, answers to interrogatories, admissions, affidavits and other evidence establish no genuine issue as to any material fact, and the moving party is entitled to judgement as a matter of law. *See 29 C.F.R. & 1614.109(g); see also Murphy V. Dep't of the Army, EEOC Appeal No. 01A040099 (July 11, 2003)* (noting that the regulation governing decisions without a hearing is modeled after the Federal Rules of Civil Procedures, Rule 56). Only disputes over facts that might affect the outcome of the suit under governing law, not irrelevant or unnecessary factual disputes, will preclude the entry of summary judgement. *See Anderson v Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).* Material

14

factual disputes include credibility disputes where two or more people have different versions of the relevant event, and the determination of that credibility dispute will affect the outcome of the case.

There is no genuine issue of Material fact if the relevant evidence in the record, taken as a whole, indicates that a reasonable factfinder could not return a verdict for the party opposing summary judgment. Id. When opposing a properly supported motion for summary judgement, a party must respond with *specific facts* showing that there is a genuine issue of material fact and that the moving party is not entitled to judgement as a matter of law. *See Anderson, 477 U.S. at 250.* An opposing party may not rest upon mere allegations or denials in the pleadings or upon conclusory statements in affidavits; rather, they must go beyond the pleadings and support their contention with proper documentary evidence. See Celotex Corp. V. Catrett, 477 U.S. 317, 324 (1986). To defeat summary judgement, a party must show that there is sufficient material evidence supporting the claimed factual dispute to require a fact finder to resolve the parties 'differing versions of the truth at trial. *Anderson, 477 U.S. at 248-49.*

## Disparate Treatment Standard

Harassment and creation of a Hostile Work Environment and Constructive Discharge: Harassment is a form of employment discrimination that violates Title VII of the Civil Rights

Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities Act of 1990, (ADA).

Harassment is unwelcome conduct that is based on race, color, religion, sex (including sexual orientation, transgender status, or pregnancy), national origin, older age (beginning at age 40), disability, or genetic information (including family medical history). Harassment becomes unlawful where 1) enduring the offensive conduct becomes a condition of continued employment, or 2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive. Anti-discrimination laws also prohibit harassment against individuals in retaliation for filing a discrimination charge, testifying, or participating in any way in an investigation, proceeding, or lawsuit under these laws; or opposing employment practices that they reasonably believe discriminate against individuals, in violation of these laws.

A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. "Fernandez v Trees, Inc., 961 F.3d 1148, 1152 (11thCir.2020). Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." See Davis v. legal Serv. Ala., Inc., 19 F.4th 1261, 1268 (11th Cir. 2021).

**Intentional Sex discrimination:**

The 11th Circuit Court of Appeals mandate stated that there were no facts to suggest that Fort Valley's actions were motivated by intentional sex discrimination. However, since 1976 Federal Courts have recognized harassment because of one's sex as sex discrimination. I was harassed

16

because of my sex by my co-worker, Ms. Bass, supervisor, Dr. Murty and his supervisor, Dean Ford for over 2 years.

In 1980 the EEOC issued Guidelines specifying that "sexual harassment" as there defined, is a form of sex discrimination prohibited by Title VII. The EEOC Guidelines fully support the view that harassment leading to noneconomic injury can violate Title VII. In the EEOC hostile environment conclusion drew upon a substantial body of judicial decisions and EEOC precedent holding that Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult. See generally 45. Reg.74646 (1980)

In 1981 the Court of Appeals for District of Columbia in Bundy v. Jackson, 205 U.S. App. D.C. 444.641 F. 2d 934 (1981) decided that a violation of Title VII may be predicated on either of two types of sexual harassment: harassment that involves the conditioning of concrete employment benefits on sexual favors, and harassment that, while not effecting economic benefits, creates a hostile or offensive working environment.  In my complaint I am alleging the latter which is the creation of an offensive or hostile work environment. Therefore, I am also alleging sex discrimination based on this court and all other federal courts decision that harassment because of my sex is sex discrimination.

In 1982 the Eleventh Circuit wrote in Henderson v Dundee, 682 F. 2d 897.902 "Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality. Surely, a requirement that a man or woman run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest racial epithets". I was harassed for over two years by my supervisors (Dr. Murty, Dean Ford) and co-worker (Ms. Bass). They used the email system at Fort Valley State to harass

17

me. Their harassment resulted in a hostile work environment and my constructive discharge. Based on the 11th Circuit court's decision that harassing someone because of their sex, creating a hostile work environment is sex discrimination.

In 1986 the Supreme Court in Meritor Savings Bank, FSB v. Vinson ET AL found that: a claim of hostile work environment is sex discrimination and is actionable under Title VII. Therefore, my current allegations of a hostile work environment is sex discrimination and is actionable under Title VII. The court also found that senior management did not have to have knowledge of the harassment. Although in my case, I informed senior management and human resources. I went to senior management after I realized that not only was I being harassed by an employee (Ms. Bass) but was harassed directly by my supervisor (Dr. Murty) and his supervisor (Dean Ford). The Supreme Court also held that sexual harassment or harassment because of my sex by my supervisor (Dr. Murty and Dean Ford) leading to a discriminatory work environment, should be imputed to the employer for Title VII purposes regardless of whether I gave "notice" of the offense. However, I did give notice to senior management and human resources.

In 1998 the Supreme Court in Faragher v. City of Boca Raton 524 U.S. 775 (1998) the court also held "that an employer is vicariously liable for actionable discrimination caused by a supervisor, but subject to an affirmative defense looking to the reasonableness of the employer's conduct as well as that of a plaintiff victim". The employer (Fort Valley State University) has not provided an affirmed defense as to why I was being harassed by my supervisors (Dr. Murty and Dean Ford). In Fact, they lied about me not responding to students even after I continuously explained to them that Ms. Bass was lying about my response.  After I informed a senior administrative official (Dr. Stuart) about being harassed by Dean Ford and Ms. Bass, I was retaliated against by Dean Ford and Dr. Murty.

In 1998 the Supreme Court decided another important case as it relates to sex discrimination. The court found in Burlington Industries, INC. v. Ellerth 524 U.S. 742 (1998) that an employee who is harassed by their supervisor but did not suffer no adverse, tangible job consequences, can recover against the employer without showing the employer is negligent or otherwise at fault for the supervisor's actions. This is relevant to my case because while I did not suffer any adverse employee actions as it relates to sex discrimination the Supreme Court is saying that it is not a requirement because I was harassed because of my sex by my supervisors and is therefore sex discrimination.

The Supreme Court also clarified the question of whether I could be harassed because of my sex creating a hostile work environment by someone of the same sex. In Oncale v. Sundowner Offshore Services, INC., et al. 523 U.S. (1998). This case is relevant to my case because both supervisors Dr. Murty and Dean Ford are both the same sex as me (male). I was harassed by both for over a year and half. Their harassment created a hostile work environment which led to my constructive discharge. And is therefore sex discrimination.

In 2005 the Supreme Court decided Jackson v. Birmingham Board of Education 544 U.S. 167 (2005) another important case as it relates to sex discrimination. The court responded to the question of whether retaliation is sex discrimination. This is relevant in this case because I am claiming retaliation. The Supreme Court found the following: retaliation is discrimination "on the basis of sex" because it is an intentional response to the nature of the complaint: an allegation of sex discrimination. The court concluded that when a funding recipient retaliates against a person because he complains of sex discrimination, this constitutes intentional "discrimination on the basis of sex" in violation of Title IX. I was retaliated against by both supervisors Dr. Murty and Dean Ford.

19

In sum the evidence that supports my claim of sex discrimination is my allegations of harassment because of my sex. In addition, the Supreme court has found that harassment because of my sex is intentional sex discrimination. The Supreme Court has also found that retaliation is sex discrimination as well.

**Retaliation:**

Title VII prohibits retaliation against an employee who opposes unlawful discrimination in the workplace. See 42 U.S.C. 200e3. To state a claim for retaliation under Title VII, Plaintiff must allege that: (1) he "engaged in statutorily protected conduct-that is conduct protected by Title VII" – by opposing discrimination, (2) he suffered an adverse action, and (3) "there is some causal relationship between the two events". To support a retaliation claim, the complaint-of action by the employer must be "materially adverse"- that is, it must be action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination". Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

The Supreme Court has addressed the issue of timelines in retaliation cases by establishing that temporal proximity alone is insufficient to demonstrate a causal connection between the protected activity and the adverse employment action. Specifically, the Supreme Court found that a three to four months interval is too lengthy to establish this causal connection (Kimble v. Georgia Pacific Corp., 245 F. Supp. 2d 862 (2002). This positions the court's stance that while immediate retaliatory actions following a protected activity might suggest a causal link, more extended periods diminish the plausibility of such a connection, requiring additional evidence beyond mere timing. Furthermore, the Supreme Court has highlighted that discrete retaliatory act, such as demotions or reprimands, are treated as individual unlawful employment practices.

20

Each incident must be filed within the relevant statutory period, typically 300 days for private-sector employees, to be actionable under title VII.

**Analysis**

As explained below there are no genuine issues of material fact in this case, and Plaintiff, Dr. Julius Trimble is entitled to judgement as a matter of law in his favor.

It is undisputed that Plaintiff, Dr. Julius Trimble is African American male and was 64 years old when he was constructively discharged from Fort Valley State University on August 9, 2009. It is also undisputed that Dr. Murty, Ms. Bass and Dean Ford sent me emails of students complaining about me being non-responsive. However, I had not received a request via email or phone call from the student. The defense has not produced any evidence to support their contention. They have not presented the original email or phone call showing that the student attempted to contact me prior to filling their complaints to Ms. Bass, Dr. Murty or Dean Ford. It is also undisputed that Ms. Bass forwarded emails of complaints of students who sent me email before business hours or on weekends. One student (Juanye Samuels) sent me an email at 7:57 am and by 9:19 am Ms. Bass had sent the message to Dr. Ramon Stuart, VP Academic Affairs as a non-responsive complaint against me. I was given 1 hour and 19 minutes to respond. I was not scheduled to work that day, but I always check my emails on my off days. So, I checked my email at 10:38 am and responded. Their policy was that faculty needed to respond

21

to non-emergency requests within 48 hours. Here I was only given an hour and 22 minutes to respond.

It is also undisputed that Ms. Bass claimed that I had not responded to adjunct professors' requests. However, evidence shows that I had already responded to their requests. Ms. Bass claimed they called or emailed her with this particular complaint. Again, they have not produced evidence such as an email from the adjuncts making that claim or call log where the phone call was made to me by the adjuncts.

It is undisputed that I was demoted from my position as Criminal Justice Program Coordinator. However, the defense has not provided any evidence as to why. They claimed that it was a normal rotation after years of being in the position. I had been in the position for over 7 years on June 17, 2021. After Dr. Murty demoted me over the phone he had Ms. Bass send me an email claiming it was because of the 3-year rotation. Dr. Murty told me over the phone, however, that he was demoting me because I was complaining about Ms. Bass. Dean Ford also said that the demotion was because Dr. Murty could not do his work with me complaining about Ms. Bass. This was retaliation for reporting them to human resources and VP Academic Affairs, Dr. Stuart.

22

It is also undisputed that Dr. Murty approved my resignation but stated that my complaints were all false. How does he know that Dean Ford and Ms. Bass did not harass me? Dr. Murty's denial is evidence of his retaliation against me. Also Dr. Murty had asked me for my resignation back in July. Dean Ford in a Zoom Meeting on January 27, 2021, told me that they were hiring for online courses at a number of universities and that I should look for employment opportunities elsewhere. I had not indicated that I was planning to resign.

**Conclusion**

The defense does not dispute sending me over 40 complaints from students and adjunct professors. However, they have not provided the necessary facts and evidence that I was unresponsive to students. That evidence should have been a non-responsive email in my system from the student in question prior to their false complaints. The defense does not dispute that Dr. Murty demoted me from the Program Coordinator's position, threaten not to renew my contract for Associate Professor of Criminal Justice (2021-2022). Dr. Murty also refused to allow me to transfer from Ms. Bass harassment. He threatened to reprimand me for complaining about being harassed. Dr. Murty's defense is that he wanted me to stop complaining about being harassed. For the reasons set forth above, Plaintiff, Dr. Julius Trimble respectfully requests that the Magistrate Judge grant his motion

23

for Summary Judgement, issue a decision on liability without a hearing, and schedule this case for a pre-hearing conference and hearing to determine what monetary damages and other relief Plaintiff, Dr. Julius Trimble should be awarded.

Dr. Julius Trimble, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on 11-24-2025, I have mailed and emailed the attached Motion for Summary Judgment to the following individual: Mary Park, Assistant Attorney General, Georgia Department of Law 40 Capitol Square, S.W. Atlanta, Georgia 30334-1300 mpark@law.ga.gov

Dr. Julius Trimble, Pro Se

Case 1:25-cv-05544-MHC-RDC    Document 10    Filed 11/26/25    Page 25 of 26

DR. Julius Trimble
904 Russel Pkwy #6691
Warner Robins, GA
31088

US POSTAGE IMI    9510511231739 12    2000392270

$3.00
SSK
FCM    11/23/25    Mailed from 31088    028W2311557

USPS FIRST-CLASS MAIL®    5.30 oz
RDC 99

F

SHIP TO:    ATLANTA GA 30303

united States District court
Northern District of Georgia
united states Court house
75 TED TURNER Drive S. W.
ATlanta, Georgia
30303



CLEARED
NOV 26 2025
U.S. Marshals Service
Atlanta, GA 30303



(420) 30303